Melbadean WEBER, Appellant
(Plaintiff Below),

v.

CITY OF FORT WAYNE, Fort Wayne
Police, Department and Officer Warren
K. Notestine, Appellees (Defendants Be-
low).

No. 02A04–8702–CV–48.

Court of Appeals of Indiana,
Fourth District.

Aug. 17, 1987.

Rehearing Denied Oct. 22, 1987.

Dennis H. Geisleman, Sowers, Larson,
Riebenack & Connolly, Fort Wayne, for
appellant.

Eric C. Chickedantz, Robert T. Keen, Liv-
ingston, Dildine, Haynie & Yoder, Fort
Wayne, for appellees.

MILLER, Presiding Judge.

Melbadean Weber brought a personal in-
jury action against the City of Fort Wayne,
its police department, and Officer Warren
Notestine after she was injured in an auto-
mobile collision in which Officer Notestine,
driving a squad car on his way to investi-
gate an independent traffic accident, struck
Weber's car in the rear. The trial court
granted all defendant's motion for summa-
ry judgment and found the officer was
engaged in the performance of his law
enforcement duties when the collision oc-
curred and all defendants were therefore
immune from liability under our Tort
Claims Act, IND.CODE 34–4–16.5–3(7).
Weber now appeals and claims that: (1) a
material issue of fact exists as to whether
Officer Notestine abandoned his investiga-
tion of the traffic accident prior to his
collision with Weber; and (2) disputed in-
ferences, which preclude summary judg-
ment, may be drawn from the undisputed
facts of the collision including; a) the in-
vestigation of a traffic accident is an ad-
ministrative police function to which no im-
munity attaches, b) driving to the scene of
an accident is preliminary to the law en-
forcement acts of investigation, and c) em-
ployment as a "law enforcement officer"
and performance of acts which constitute
"enforcing a law" are distinguishable.

We affirm.

## FACTS

The undisputed facts of the collision are as follows: On the morning of February 17, 1984, Officer Notestine was on duty with the Fort Wayne Police Department ("FWPD"), patroling the north side of Fort Wayne in a marked FWPD squad car. At approximately 10:48 a.m., he was dispatched by radio to investigate a personal injury accident which had occurred in the 3700 block of North Clinton Street near its intersection with Coldwater Road. In accordance with departmental policy, he activated his emergency lights, siren and headlights and proceeded to the scene.

At approximately 10:50 a.m., Melbadean Weber was driving north on Coldwater Road to her office. Traffic was heavy and the right lane was backed-up due to the car collision at the nearby intersection with North Clinton Street. Melbadean Weber was driving in the far left lane. As Officer Notestine approached the scene of the accident, driving north on Coldwater, he saw that traffic was stopped in the right (east) northbound lane of Coldwater Road. Accordingly, he was traveling in the left (west) northbound lane of Coldwater Road. It was Officer Notestine's intention to proceed around the stopped traffic to the personal injury accident scene on the east side of the intersection with North Clinton Street.

When Officer Notestine was approximately one (1) block from the accident scene, driving north on Coldwater Road, he deactivated his siren but left on the squad car's emergency lights and bright headlights. At that time, he also radioed a Code 9 to the FWPD dispatcher, indicating that he had arrived at the accident scene. While looking to his right, Notestine failed to see Weber's vehicle and the traffic in front of him. Immediately thereafter, Officer Notestine struck the rear of Weber's vehicle, which had stopped in front of his squad car in the left northbound lane of Coldwater Road when the traffic light at North Clinton changed to red.

After proper notice under the Tort Claims Act, Weber filed a personal injury complaint on January 24, 1986 alleging Officer Notestine was negligent in the operation of the squad car and failed to both keep a lookout and keep his police car under control, thereby causing this rear-end collision. Weber alleged the City of Fort Wayne and its police department are vicariously liable for the officer's negligent acts. All defendants moved for summary judgment and on October 27, 1986 the trial court granted their motion as follows:

> "The Court, having under advisement the matter of Defendants' Motion For Summary Judgment now finds that Defendant, Warren F. Notestine, is a Fort Wayne Police Officer involved in a rear-end collision with Plaintiff while the officer was engaged in the performance of his duties and en route to a personal injury accident; that the actions of Defendant Officer were in the performance of his duties while enforcing the law and all Defendants are immune under Indiana Code Section 34–4–16.5–1; that there is no material issue of fact. Defendants' Motion For Summary Judgment granted and Judgment entered that Plaintiff take nothing by her Complaint. Cost to Plaintiff."

Record, p. 87.

## ISSUES

Weber appeals and raises the following issues, restated, for our consideration:

I. Whether the trial court erred in granting summary judgment in favor of all defendants because a material issue of fact exists as to whether Officer Notestine abandoned his investigation of the independent traffic accident immediately before his collision with Weber.

II. Whether the trial court erred in granting summary judgment in favor of all defendants because disputed inferences may be drawn from the undisputed facts of the collision including a) the investigation of a traffic accident is an administrative police function to which no immunity attaches, b) driving to the scene of an accident is preliminary to the law enforcement acts of investigation, and (c) employment as a "law enforcement officer" and performance of acts

which constitute "enforcing a law" are distinguishable.

## DECISION

Our standard of review is well-settled regarding motions for summary judgment. In reviewing the grant of a motion for summary judgment, this court applies the same standard applicable in the trial court. Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Indiana Rules of Trial Procedure, 56(C). A fact is material if it helps prove or disprove an essential element of the plaintiff's cause of action. *Delk v. Board of Commissioners of Delaware County* (1987), Ind.App., 503 N.E.2d 436. When reviewing a summary judgment, we must accept as true the facts alleged by the non-moving party. *Romack v. Public Service Co. of Indiana* (1986), Ind.App., 499 N.E.2d 768. Even if the facts are not disputed, summary judgment is not appropriate when conflicting inferences may be drawn from the facts. *Steele v. Davisson, Davisson & Davisson, P.C.* (1980), Ind.App., 437 N.E.2d 491.

A defendant seeking summary judgment must demonstrate the undisputed material facts negate at least one element of the plaintiff's claim. This is true even where, as here, the plaintiff would have the burden of proof at trial. *McCullough v. Allen* (1983), Ind.App., 449 N.E.2d 1168. To counter a summary judgment motion filed by the defendant and supported as provided by Indiana Rule of Trial Procedure 56, the plaintiff:

> "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

T.R. 56(E). In ruling on a motion for summary judgment the trial court does not resolve factual controversies but only determines whether there is a material issue of fact which must be resolved by trial.

Therefore, in reviewing the trial court's ruling, we must first discern whether the City's motion for summary judgment showed the undisputed material facts establish a defense to Weber's claim. Next we must determine whether Weber's material in opposition to the City's motion for summary judgment controverted those facts thereby creating a genuinely disputed issue for trial. We turn now the issues Weber has raised for consideration on appeal.

## I. *Abandonment of Investigation*

Although the facts of the collision are uncontested, Weber argues on appeal that a genuine issue of material fact exists as to whether Officer Notestine abandoned his investigation of the independent car collision before he struck Weber's vehicle. Weber argues that abandonment is illustrated by the following facts: (1) Officer Notestine deactivated his siren and radioed the dispatcher that he had arrived at the accident scene prior to the collision; (2) the collision occurred in the left (west) northbound lane of Coldwater Road when the accident was ahead and on the right (east) of the intersection; and (3) another police officer had already arrived at the accident scene. Weber then concludes that the accident occurred while Officer Notestine was merely on patrol, and that merely patroling does not constitute "enforcement of the law" under I.C. 34-4-16.5-3(7).

The City responds that the above facts create no reasonable inference that Officer Notestine abandoned his investigation of the independent car accident before he struck Weber's vehicle. We agree. First, Officer Notestine simply followed normal police procedure in deactivating his siren, but leaving on his emergency light and headlights, and in notifying the dispatcher of his arrival at the scene of the accident. Second, the mere fact that another police officer had already arrived at the scene provides no support for the inference of abandonment. It is not uncommon for more than one officer or squad car to respond to a personal injury accident. Finally, the record reflects that Officer Notes-

tine was traveling in the left northbound lane at the time of the accident to circumvent traffic stopped in the right northbound lane in order to reach the accident scene on the northeast side of the intersection. Record, p. 82. It is uncontroverted that from the moment of dispatch until impact, it was always Officer Notestine's intention to proceed to the scene of the personal injury accident. Record, p. 82. Whether or not merely patroling and being on the lookout constitutes enforcement of the law is a question not presented here so we need not resolve this issue.

In view of these facts, Weber's position is the product of pure speculation and is insufficient, as a matter of law, to raise a material issue of fact and preclude summary judgment.

## II. *Disputed Inferences from Undisputed Facts*

█ Weber contends the investigation of a personal injury/property damage accident is an administrative police function rather than a law enforcement function and therefore the defendants are not entitled to immunity under the Tort Claims Act. Weber asserts that only criminal law enforcement duties of police officers are afforded immunity under our Tort Claims Act and argues as follows:

"In Defendants' Memorandum For Summary Judgment, Defendants set forth many duties of City Police Officers. Separately, the duties listed included: preserving the peace; preventing offenses; detecting and arresting criminals; assisting, advising and protecting strangers and travelers in the public ways or transportation facilities. (R 57) In addition to State statutory responsibilities, Fort Wayne Police Officers are required to separately enforce City Ordinances, including: enforcing street and traffic laws and regulations of the City; enforcing all state vehicle laws applicable to traffic in the City; to make arrests for traffic violations; to investigate accidents. (R 58) Melbadean Weber contends that the decision to enforce these duties and laws is protected by immunity under the Indiana Tort Claims Act. However, once a decision to perform a duty is made, the officer must perform his duty in a reasonably prudent manner. Melbadean Weber further argues that the duties listed above only in part require "enforcement of a law". Many duties and services are performed by police officers other than criminal law enforcement. When performing these other duties there is no public policy reason to protect police officers and municipalities from ordinary negligence. Defendant/Officer Notestine's driving to investigate another car collision is an administerial/ministerial act for which immunity does not apply."

Appellant's Brief, p. 9–10.

The City responds that law enforcement officers and their employers, under I.C. 34–4–16.5–3(7) and our caselaw, are granted immunity for *all torts*, except assault and battery and false imprisonment, *committed while in the course of performing their duties*. The City then maintains that law enforcement officers, under I.C. 36–8–3–10 [1] which establishes the general duties

---

**1.** I.C. § 36–8–3–10 sets forth the general duties of a City Police Department, in pertinent part, as follows:

"Police departments, chiefs and captains; powers and duties.
Sec. 10. (a) The police department shall, within the city:
(1) preserve peace;
(2) prevent offenses;
(3) detect and arrest criminals;
(4) suppress riots, mobs, and insurrections;
(5) disperse unlawful and dangerous assemblages and assemblages that obstruct the free passage of public streets, sidewalks, parks, and places;

(6) protect the rights of persons and property;
(7) guard the public health;
(8) preserve order at elections and public meetings;
(9) direct the movement of vehicles in public ways or public places;
(10) remove all nuisances in public parks or public ways;
(11) provide proper police assistance at fires;
(12) assist, advise, and protect strangers and travelers in public ways or at transportation facilities;
(13) carefully observe and inspect all places of business under license, or required to have them; and

of a City Police Depoartment, and Fort Wayne City Ordinance § 17–152 [2] which imposes additional duties upon police officers, have a general duty to enforce traffic laws and make arrests for traffic violations and a specific duty to investigate accidents, to which immunity attaches.

While we agree with Weber that the decision to investigate an accident is a discretionary function and protected under I.C. 34–4–16.5–3(6), and that the carrying out of that decision is a ministerial act unprotected by subsection 3(6), the portion of the Tort Claims Act at issue here is subsection 3(7), enforcement of the law. The relationship between discretionary functions and enforcement of the law is undoubtedly overlapping in some factual circumstances and mutually exclusive in other situations. However, we need not define this relationship here as the question presented is whether the trial court correctly found Officer Notestine was "enforcing the law" at the time of his collision with Weber and therefore immunity attaches under subsection 3(7).

Both parties rely upon *Seymour National Bank v. State* (1981), Ind., 422 N.E.2d 1223, *on reh.* 428 N.E.2d 203, and we agree that it controls the result to be reached here. In *Seymour*, a State Trooper, while pursuing a fleeing suspect in a high speed automobile chase, was involved in an automobile accident fatal to a third party. Our supreme court held the State was immune from suit under IND.CODE 34–4–16.5–3(7) because "an officer engaged in effecting an arrest is in fact enforcing a law." *Seymour*, 422 N.E.2d at 1226. On petition for rehearing in *Seymour*, our supreme court clarified its earlier decision regarding the scope and possible limits of immunity for "enforcement of the law":

"The State of Indiana and its employees are not liable for losses resulting from the enforcement of or failure to enforce a law, unless such enforcement constitutes false arrest or false imprisonment. It does not follow, however, that the statute necessarily grants immunity for all acts of law enforcement officers committed while engaged in the enforcement of the law. If the injury in question resulted from the enforcement of a law, immunity is granted to both the governmental entity and to the employee, notwithstanding that the enforcement resulted in a loss that would not have occurred but for the negligent manner in which the duty was performed. However, an employee's acts, although committed while engaged in the performance of his duty, might be *so outrageous as to be incompatible with the performance of the duty undertaken.* In such a case, it cannot be said that an injury resulting therefrom resulted from the performance of the duty. Such acts, whether intentional or willful and wanton, are simply *beyond the scope of the employment.*" (footnote omitted). (emphasis added).

*Seymour*, 428 N.E.2d at 204.

While our Supreme Court has expressed its agreement with Weber's argument that employment as a "law enforcment officer" and performance of acts that constitute "enforcing a law" are distinguishable, Indiana case law indicates that proceeding to the scene of an investigation in response

---

(14) enforce and prevent the violation of all laws in force in the city."

2. Fort Wayne City Ordinance § 17–152 imposes additional duties upon its police officers, providing, in pertinent part, as follows:

"(a) There is hereby established in the police department of the City a traffic division to be under the control of a captain of police appointed by and directly responsible to the chief of police.

(b) *It shall be the general duty of the traffic division and of all members of the police department to enforce the street traffic laws and regulations of this City and all the State vehicle laws applicable to traffic in this City; to make arrests for traffic violations; to investigate accidents;* to cooperate with the City Traffic Engineer and other officers of the City in developing ways and means to improve traffic conditions; and to carry out those duties specifically imposed upon such division by this chapter and other traffic ordinances of the City.

(c) *It shall be the particular duty of the traffic division:*

\* \* \* \* \* \*

(2) *To investigate traffic accidents* and, assisted by all members of the police department, to arrest and to assist in the prosecution of those persons charged with violations causing or contributing to such accidents." (Emphasis added.)

to a call to assist another officer is "enforcing a law." This court has decided a number of cases since *Seymour,* and all have found the officer was acting within the scope of his employment and enforcing the law.[3]

Recently, Judge Hoffman, writing for the Third District in *Indiana State Police Department v. Swaggerty* (1987), Ind.App., 507 N.E.2d 649, held the trial court erroneously failed to grant summary judgment in the State's favor where parties injured in a collision with a police patrol vehicle brought an action against the officer and the state police. This court held that an officer assisting a fellow officer in pursuit of a fleeing vehicle was acting within the scope of employment by enforcing the law and thus was entitled to immunity under the Tort Claims Act. Judge Hoffman reasoned:

> "The (trial) court's finding that Trooper Spiller was several blocks away from the actual chase scene does not distinguish this case from the holding in *Seymour Nat. Bank.* It is axiomatic that assisting another law enforcement officer is within the scope of employment of Trooper Spiller. There is no question that the help of one unit to another is an important facet of effective law enforcement, and it would be dangerous precedent to set a standard which would cause law enforcement officers to hesitate before lending assistance to another officer.

The protection of law enforcement officers in such a situation is entirely consistent with the stated purpose of the granting of immunity by the Indiana Tort Claims Act. The policy underlying the statute is to protect public officials in the performance of their duties by preventing harrassment by threats of civil litigation over decisions they make within the scope of their positions. *Board of Com'rs of Hendricks County v. King* (1985), Ind.App., 481 N.E.2d 1327, 1330."

*Swaggerty,* 507 N.E.2d at 651–52.

Most recently, Judge Hoffman's above language was quoted with approval and applied by Judge Neal in *Crews v. Brockman* (1987), Ind.App., 510 N.E.2d 707. In *Crews,* Sharon Brockman was injured after the vehicle in which she was a passenger was struck by Officer Poindexter, a reserve police officer employed by the City of Franklin. Officer Poindexter was on patrol and received a call to investigate a possibly violent domestic disturbance. En route to the disturbance, Poindexter approached an intersection where the signal was red, slowed his vehicle, visually checked the intersection, proceeded into the intersection and struck the vehicle driven by Crews in which Brockman was a passenger. Brockman brought suit against Crews, Officer Poindexter, and the City. Officer Poindexter and the City moved for summary judgment, relying upon the immunity provided

---

**3.** *See generally, State v. Flanigan* (1986), Ind. App., 489 N.E.2d 1216 (in personal injury suit by flea market customers who were struck and injured by vehicle while walking on or along highway to attend flea market, the First District held any decision by the state police whether to patrol the area of the flea market or to provide traffic control, was a decision on whether to enforce the law, a discretionary act clearly within and protected by the immunity granted by the Tort Claims Act); *Board of Commissioners of County of St. Joseph v. Arick* (1985), Ind.App., 477 N.E.2d 112 (in a wrongful death action against the county for death of a passenger in a car involved in an accident at an intersection at which the traffic light was malfunctioning and from which a county police officer, who came to attend the light, left within a few minutes after arriving to assist other officers responding to a call concerning domestic violence involving firearms, the trial court erred in refusing to give the county's requested jury instruction govern-

ing the county's immunity from liability resulting from failure to enforce a law); *Indiana State Police v. May* (1984), Ind.App., 469 N.E.2d 1183 (in a homeowner's action against the state to recover damages arising out of law enforcement officer's attempts to capture a fleeing murder suspect who had taken refuge in their home, state immune from liability for fire damage and tear gas odor resulting from its acts of law enforcement; the First District held the officer's firing of tear gas canisters into the home was intentional conduct but nevertheless was protected as enforcement of the law under Tort Claims Act); *Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253 (statements by officers made in the course of interviews during investigation of poisoning death were made within scope of officer's employment; interviews were conducted during investigation which constituted enforcement of the law; officers and city immune from defamation liability under Tort Claims Act).

for enforcement of the law under I.C. 34–4–16.5–3(7). The trial court denied summary judgment and Judge Neal, writing for the First District, reversed the trial court's denial and found both the police officer and the City are entitled to summary judgment and immune from civil liability pursuant to I.C. 34–4–16.5–3(7) as a matter of law because a police officer traveling to a domestic disturbance is acting within the scope of his employment and engaged in enforcement of law. We agree with Judge Neal and conclude that, here, driving to the scene of an accident in response to a call was not preliminary to enforcing the law but was instead part of the process of enforcing the law. Officer Notestine was assisting another officer within the scope of his employment by responding to a call to investigate an accident. We therefore find assisting another officer in the investigation of a personal injury accident is enforcing the law within the meaning of I.C. 34–4–16.5–3(7).

The judgment of the trial court is affirmed.

YOUNG and STATON, JJ., concur.