Tricia B. QUAKENBUSH, Appellant,
(Plaintiff Below)

v.

Florence E. LACKEY and City
of Indianapolis, Appellees.
(Defendants Below)

Samuel McAFFEE, Appellant,
(Plaintiff Below)

v.

Florence E. LACKEY, and City
of Indianapolis, Appellees.
(Defendants Below)

Mac MEDLIN and Larry Allen,
Appellants, (Plaintiffs
Below)

v.

Florence E. LACKEY, Indianapolis Police Department, and City of Indianapolis, Appellees. (Defendants Below)

No. 49S04–9310–CV–1159.

Supreme Court of Indiana.

Oct. 25, 1993.

William D. Hall, Greenwood, for appellants Tricia B. Quakenbush and Samuel McAfee.

Alex Rogers, Steers Sullivan McNamar & Rogers, Indianapolis, for appellants, Mac Medlin and Larry Allen.

Mary Ann Oldham, City–County Legal Div., City of Indianapolis, Indianapolis, for appellees, Florence E. Lackey and City of Indianapolis.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

We grant transfer to arrest further expansion of the Tort Claims Act so-called "law enforcement immunity," and decide that a police officer travelling to the scene of a crime is not immune from civil liability for driving in a negligent manner. *Ind. Code Ann.* § 34–4–16.5–3(7) (West Supp. 1992). In doing so, we abandon the *dicta* of our earlier decision in *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, and overrule

our earlier decision in *Seymour Nat'l. Bank v. State* (1981), Ind., 422 N.E.2d 1223, *modified on reh'g* 428 N.E.2d 203.

Tricia B. Quakenbush, Samuel McAfee, Mac Medlin, and Larry Allen (Plaintiffs–Appellants below) seek transfer after the Court of Appeals affirmed the grant of summary judgment against them and in favor of Florence Lackey and the City of Indianapolis (Defendants–Appellees below). *Quakenbush v. Lackey* (1992), Ind.App., 604 N.E.2d 1210.[1]

### Facts

Lackey was a patrol officer for the Indianapolis Police Department. On March 24, 1989, at approximately 11:20 p.m., Lackey was driving to the scene of a domestic disturbance where a man was reportedly striking a woman in a parking lot. Lackey was driving a marked police car with the headlights on; but witnesses stated that Lackey had not activated the flashing lights, the spotlights, the siren, or the horn. Lackey entered the intersection of 38th Street and Post Road on a red light and collided with the car driven by Quakenbush. The other plaintiffs were passengers in the Quakenbush vehicle.

Plaintiffs sued to recover for personal injuries and property damage. Lackey moved for summary judgment on the grounds that she and the City were immune under *Ind.Code* § 34–4–16.5–3(7). The motions were granted in the trial court and affirmed by a majority of the Court of Appeals.

### History of Cases Interpreting Section 3(7) of the Indiana Tort Claims Act

■ Governmental immunity in Indiana is regulated by the Tort Claims Act, *Ind. Code Ann.* § 34–4–16.5–1 through § 34–4–16.5–22 (West 1983 & Supp.1992). Governmental entities and their employees are subject to liability for torts committed by them, unless the activity giving rise to the tort falls within one of the exceptions enumerated in the Act. *Peavler v. Monroe County Bd. of Comm'rs.* (1988), Ind., 528 N.E.2d 40, 42. Section 3(7), pursuant to which Lackey seeks immunity, provides:

A governmental entity or employee acting within the scope of his employment is not liable if a loss results from:

. . . .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations) unless the act of enforcement constitutes false arrest or false imprisonment.

*Ind.Code* § 34–4–16.5–3(7).

The first case decided by this Court interpreting the extent of the "law enforcement immunity" in Section 3(7) was *Seymour Nat'l. Bank v. State* (1981), Ind., 422 N.E.2d 1223, *modified on reh'g*, 428 N.E.2d 203. In *Seymour*, this Court held that "all acts of enforcement save false arrest and imprisonment now render the State immune," 422 N.E.2d at 1226, and concluded that the State was immune from liability for the negligence of a state trooper during a high speed chase of a criminal suspect. In so holding, the 3–2 majority rejected the opinion of the two dissenting members (DeBruler and Hunter, JJ.), 422 N.E.2d at 1226–29, and the unanimous opinion of the First District Court of Appeals, (1979), 179 Ind.App. 295, 384 N.E.2d 1177, 1183–84, that the legislature had not intended to grant immunity for the breach of a private duty owed by governmental entities or employees to individual citizens.

Ten years later, we re-examined Section 3(7) to determine its applicability to cases involving jail detainees. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796. Although we rejected the notion that immunity attaches to all law enforcement activities, in our effort to give due weight to *stare decisis*, we reaffirmed the holding in *Seymour* as applied to its facts. Accordingly, in *Tittle*, we stated that the immunity provided by Section 3(7) was limited to "activities at-

---

1. Originally, separate suits were filed. In the trial court, suits filed by McAfee, Medlin and Allen were pending in the same court and were consolidated. The Quakenbush claim was filed in a different court. After summary judgment was entered on all the claims, they were consolidated for purposes of appeal.

tendant to effecting the arrest of those who may have broken the law." 582 N.E.2d at 801. As another way of stating the same concept, we said in a companion case that immunity was limited to "actual attempts to effect an arrest of one who may have broken the law." *City of Wakarusa v. Holdeman* (1991), Ind., 582 N.E.2d 802, 803. We rejected the notion that the law enforcement immunity of Section 3(7) was co-extensive with the statutory obligations placed on law enforcement officials. *City of Valparaiso v. Edgecomb* (1992), Ind., 587 N.E.2d 96, 97. Thus, we held that law enforcement officers are not immune for treatment of pre-trial detainees, *Tittle*, 582 N.E.2d at 801; when searching for possible license plate violations, *Wakarusa*, 582 N.E.2d at 804; or when leading a funeral procession, *Edgecomb*, 587 N.E.2d at 97.

 This case and the other cases we decide today, *Fries v. Fincher* (1993), Ind., 622 N.E.2d 1294, and *Belding v. Town of New Whiteland* (1993), Ind., 622 N.E.2d 1291, require us to focus more precisely on the parameters of "enforcement of a law" as it relates to arrest activities. The necessity to address once again the meaning of this phrase fulfills Justice Hunter's prediction in his dissent to *Seymour*, that the interpretation of the ambiguous term "enforcement of a law" will open "a Pandora's box of unsettling questions which will re-volve around dubious distinctions between the 'administration' and 'enforcement' of laws." 422 N.E.2d at 1229. So, too, the statements in *Tittle* accomplish little more than requiring courts and litigants across this State to guess at our intended meaning of "actual attempt to effect an arrest," [2] and cause us to conclude that our reluctance to overrule a prior decision of this Court has produced an unworkable rule of law.[3]

Moreover, further reflection upon the parameters of the common law governmental immunity doctrine existing at the time the Tort Claims Act was passed, the language of Section 3(7) itself, and correct application of the rules of statutory construction, convince us that the statements in *Tittle* do not comport with any sound legal principle other than *stare decisis*. Therefore, we begin anew our analysis of Section 3(7).

### Status of Common Law When Tort Claims Act Enacted

At the time the Tort Claims Act became law, Indiana courts had determined not only that the king could do wrong, but that he could be held accountable for those wrongs. Governmental immunity for the breach of a private duty had been virtually abolished by judicial decisions. *Brinkman v. City of Indianapolis* (1967), 141 Ind.

---

**2.** For example, in this case, Judge Chezem held that Lackey was in the course of apprehending a suspect because she was dispatched to investigate an identifiable criminal who may have been committing a crime which increased the likelihood of immediate physical injury to others. *Quakenbush,* 604 N.E.2d at 1212. In our view, Judge Chezem's decision does not follow *Tittle* for the reasons outlined in Judge Miller's dissent: traveling to the scene to investigate a crime is not an actual attempt to effect an arrest. 604 N.E.2d at 1219.

**3.** In part, this is so because the scope of the phrase "adoption or enforcement of a law" used in Section 3(7) is not limited to traditional law enforcement activities such as the arrest or pursuit of suspects by police. Rather, in its broader (and correct) meaning, Section 3(7) applies to the decision of any governmental entity and its employees about whether to adopt or enforce any statute, rule, or regulation. Thus, under Section 3(7), a city is immune from any deci-sion it makes concerning legal action to end a strike by fire fighters, *Boyle v. Anderson Fire Fighters Ass'n.* (1986), Ind.App., 497 N.E.2d 1073, 1077; immunity attaches to an administrative order from the Department of Natural Resources that a property owner stop construction of a dam, *State v. Taylor* (1981), Ind.App., 419 N.E.2d 819, 822–23; immunity attaches to the Department of Corrections and its employees for an investigation of attorneys' activities, *Indiana Dept. of Correction v. Stagg* (1990), Ind. App., 556 N.E.2d 1338, 1341–42; immunity attaches to a municipality that issued a stop work order in the course of enforcing a zoning ordinance, *City of Seymour v. Onyx Paving Co.* (1989), Ind.App., 541 N.E.2d 951, 958; and immunity attaches to a sanitation officer's enforcement of local disposal ordinance, *Board of Comm'rs. of Hendricks County v. King* (1985), Ind.App., 481 N.E.2d 1327, 1331. All of the above activities relate to enforcement of or failure to enforce laws, rules or regulations by a governmental entity.

App. 662, 231 N.E.2d 169 (municipalities); *Klepinger v. Board of Comm'rs.* (1968), 143 Ind.App. 178, 239 N.E.2d 160 (counties); *Perkins v. State* (1969), 252 Ind. 549, 251 N.E.2d 30 (state proprietary functions); *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733 (state governmental functions).[4]

Nonetheless, the erosion of governmental immunity at common law did not leave governmental entities and their employees subject to liability for every mistake. Rather, as the court in *Campbell* noted, governmental units were not liable for all acts or omissions which might cause damage to persons, but only those involving the breach of a private duty owed to an individual. 259 Ind. at 62, 284 N.E.2d at 737. To illustrate the retention of immunity in favor of governments and their employees for breach of a public duty, the *Campbell* court cited *Simpson Food Fair v. City of Evansville* (1971), 149 Ind.App. 387, 391, 272 N.E.2d 871, 873. In *Simpson,* the city and its police were held immune from a claim by a retail grocery corporation that city police negligently failed to halt a wave of criminal activities that had forced the store out of business, because the duty to provide police protection under those circumstances was a duty owed to the public at large, not to individual members of the public. 149 Ind.App. at 393–95, 272 N.E.2d at 875–86. On the other hand, governmental entities and employees were not immune for the breach of a duty owed to an individual. *Id.; see also Board of Comm'rs. of Delaware County v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852. This public/private duty analysis has been applied to various fact situations subsequent to passage of the Act. *See, e.g., Lewis v. City of Indianapolis* (1990), Ind. App., 554 N.E.2d 13, 16 (city owes no private duty to individual user of "911" emergency telephone system; city immune from

liability for system malfunction); *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, 1218 (duty to control traffic is owed to public; police immune from private suit for damages); *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184, 1187 (duty to fight fires is a public duty; city immune for not responding); *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, 305 (duty to apprehend suspect owed to public; police immune from failure to arrest suspect before he committed another crime).

### *Law Enforcement Immunity*

██ Following the decision in *Campbell,* 259 Ind. 55, 284 N.E.2d 733, the legislature passed the Indiana Tort Claims Act which regulated these common law rights with the creation of notice requirements, limitations on recovery, and immunity provisions.

The so-called law enforcement immunity at issue here was one of the immunity provisions included in the Act. *Ind. Code* § 34–4–16.5–3(7). Inasmuch as the allegations in *Seymour* involved the breach of a police officer's private duty to exercise reasonable care in the operation of a motor vehicle upon a public highway, *see Ind. Code* § 9–13–2–6 and *Ind. Code* § 9–21–1–8, this Court's task in *Seymour* should have been to determine to what extent, if any, the legislature intended Section 3(7) to alter the common law right of citizens to seek recovery for the breach of this private duty.[5]

Instead, the *Seymour* majority held that the meaning of the term "enforcement of a law" was clear, and that "all acts of enforcement save false arrest and imprisonment now render the State immune." 422 N.E.2d at 1226. This statement resulted in an immunity co-extensive with the statutory obligations placed on governmental enti-

---

**4.** Some immunities remained. *See, e.g., Foster v. Pearcy* (1979), 270 Ind. 533, 387 N.E.2d 446, *cert. denied,* 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (prosecutorial immunity); *Peavler v. Monroe County Bd. of Comm'rs.* (1988), Ind., 528 N.E.2d 40, 44 (judicial immunity).

**5.** Appellate courts addressing the Tort Claims Act prior to this Court's decision in *Seymour* generally agreed that the legislature intended to

adopt the common law. This Court's majority opinion in *Seymour* rejected that conclusion, although the proposition continued to appear in opinions. *See, e.g., Indiana Dept. of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338, 1345 (Staton, J., dissenting) (The Tort Claims Act "merely encoded the common law tenets of sovereign immunity.")

ties and their employees; that is, whenever a governmental employee acted pursuant to some statutory authority, that governmental employee and his employer would be immune from liability.

In the various decisions following, the Court of Appeals relied on *Seymour* to extend law enforcement immunity to encompass many acts within the scope of a law enforcement officer's employment. *See, e.g., City of Valparaiso v. Edgecomb* (1991), Ind.App., 569 N.E.2d 746, *vacated,* (1992) Ind., 587 N.E.2d 96 (collision while officer led funeral procession); *Tittle v. Mahan* (1991), Ind.App., 566 N.E.2d 1064, *vacated,* (1991) Ind., 582 N.E.2d 796 (care of prisoner awaiting trial); *City of Wakarusa v. Holdeman* (1990), Ind.App., 560 N.E.2d 109, *vacated,* (1991) Ind., 582 N.E.2d 802 (rear-end collision while officer looked in rear-view mirror for possible license plate violations); *Bevis v. City of Indianapolis* (1991), Ind.App., 565 N.E.2d 772 (rear-end collision on route to assist burglary investigation); *Carver v. Crawford* (1990), Ind.App., 564 N.E.2d 330 (squad car crossed center line on route to investigate suicide); *McFarlin v. State* (1988), Ind.App., 524 N.E.2d 807 (providing flares at the scene of an accident); *City of Gary v. Cox* (1987), Ind.App., 512 N.E.2d 452 (bystander shot as prisoner escaped); *Weber v. City of Fort Wayne* (1987), Ind. App., 511 N.E.2d 1074 (rear-end collision on route to investigate traffic accident); *Crews v. Brockman* (1987), Ind.App., 510 N.E.2d 707 (collision when squad car entered intersection against red light); *Indiana State Police Dept. v. Swaggerty* (1987), Ind.App., 507 N.E.2d 649 (collision when officer ran red light on way to assist in a chase); *Indiana State Police v. May* (1984), Ind.App., 469 N.E.2d 1183 (canisters of tear gas fired into citizen's home to apprehend fleeing suspect).

In their dissents to *Seymour,* Justices DeBruler and Hunter opined that the meaning of Section 3(7) was ambiguous, and urged that Section 3(7) be construed in a manner to avoid unjust or harsh results to those injured by acts of governmental employees. 422 N.E.2d at 1227. As Justice DeBruler wrote:

> Here, the immunity statute is in derogation of the common law and at odds with the statutory command that emergency vehicles be operated with due care. [*Ind. Code* § 9–21–1–8] At common law this state police officer would be required to respond in damages for injuries resulting from his negligent operation of the patrol car. To grant an immunity which would shield negligent and reckless conduct obviously leaves injured victims to suffer without any remedy. Were we to construe the vague immunity provision as being applicable only in circumstances in which the public employee's conduct involved a public duty only, impediment of the common law would be lessened, unjust consequences would be reduced in number, and the two statutes would be left viable and in harmony. This is the legal course charted by Judge Robertson, and I am convinced it is the correct one.

422 N.E.2d at 1227.

In writing the *Seymour* opinion for the Court of Appeals, Judge Robertson described the "public-private" duty test of *Campbell,* and concluded that the obligation of a police officer to use reasonable care in the operation of a squad car was a private duty. 384 N.E.2d at 1187. Pursuant to that conclusion, at common law, a officer would not be immune for the breach of that duty. Judge Robertson also addressed whether Section 3(7) changed the common law. In doing so, he concluded that the term "enforcement of the law" rendered Section 3(7) ambiguous and ultimately concluded "that the legislature intended enforcement to mean at least that the decision to enforce and the end result thereof upon the object of the enforcement (within the bounds of law) is protected activity and will not give rise to a civil action for damages." *Id.* at 1186. In other words, he reasoned that the decision of whether or not to investigate a crime, whether to arrest a particular individual for committing a crime, and the arrest itself were protected activities so long as the

acts are otherwise conducted legally. He concluded that these activities were in the nature of the public duty owed by law enforcement officials to the community as a whole. *Id.*

We believe this analysis comports with the legislature's intent when it drafted Section 3(7). This analysis also gives meaning to the exception in Section 3(7) that immunity does not apply if an officer's conduct results in false arrest or false imprisonment.

■ To conclude that Section 3(7) confers immunity to all law enforcement activity conducted within the course and scope of employment, as did the *Seymour* majority, results in a statute in derogation of common law because prior to the Act, liability was imposed in connection with certain law enforcement activity. A statute in derogation of the common law is strictly construed against limitations on a claimant's common law right to bring suit. *Collier v. Prater* (1989), Ind., 544 N.E.2d 497, 498. The Court presumes that the legislature does not intend to make any change in the common law beyond what a statute declares either in express terms or by unmistakable implication. *State Farm Fire & Cas. Co. v. Structo Div., King Seeley Thermos Co.* (1989), Ind., 540 N.E.2d 597, 598. Granting immunity to law enforcement officers who fail to exercise reasonable care while driving would sanction negligent and reckless conduct,

and result in hardship to the individual injured by the enforcement.

■ Moreover, as Justice DeBruler noted in his dissent to *Seymour*, interpreting Section 3(7) to confer immunity in situations involving the operation of police vehicles on public streets conflicts with other statutes which regulate the operation of such vehicles. Specifically, *Ind. Code* § 9–21–1–8 provides that persons who drive an authorized emergency vehicle, such as a police car, are not relieved from the duty to drive "with due regard for the safety of all persons," even though such drivers may disobey certain rules of the road.[6] Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony. *Wright v. Gettinger* (1981), Ind., 428 N.E.2d 1212, 1219.

Judge Robertson and Justices DeBruler and Hunter reasoned that Section 3(7) did not confer immunity to "law enforcement" activity outside the public duty owed to the community as a whole. Instead, governmental entities and their employees would be subject to liability for the breach of private duties as at common law. For example, having decided to respond to the report of a law being broken, the responding officer owes a duty of driving with reasonable care to other travelers on the highway. We are persuaded that this reasoning was correct.

Accordingly, we hold that Section 3(7) was intended to codify the common law as

---

**6.** *Ind. Code* § 9–21–1–8 provides:

(a) This section applies to the person who drives an authorized emergency vehicle when:
 (1) responding to an emergency call;
 (2) in the pursuit of an actual or suspected violator of the law or
 (3) responding to, but not upon returning from, a fire alarm.
(b) The person who drives an authorized emergency vehicle may do the following:
 (1) Park or stand, notwithstanding other provisions of this article.
 (2) Proceed past a red or stop signal or stop sign, but only after slowing down as necessary for safe operation.
 (3) Exceed the maximum speed limits if the person who drives the vehicle does not endanger life or property.

 (4) Disregard regulations governing direction of movement or turning in specified directions.
(c) This section applies to an authorized emergency vehicle only when the vehicle is using audible or visual signals as required by law. An authorized emergency vehicle operated as a police vehicle is not required to be equipped with or display red and blue lights visible from in front of the vehicle.
(d) This section does not do the following:
 (1) Relieve the person who drives an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons.
 (2) Protect the person who drives an authorized emergency vehicle from the consequences of the person's reckless disregard for the safety of others.

it existed at the time the Act was passed. The state of the common law was such that governments and their employees were subject to liability for the breach of private duties owed to individuals, but were immune from liability for the breach of public duties owed to the public at large.

### *Application of Law to Facts*

■ The gist of plaintiff's complaint is that Lackey drove her squad car in a negligent manner. As such, the complaint alleges the breach of a private duty owed by Lackey to the plaintiffs. Accordingly, Section 3(7) does not provide immunity.

■ Whether Lackey's conduct fell below the level of care that an ordinarily-prudent person would exercise under the same or similar circumstances is a question of fact. Summary judgment is inappropriate in such a circumstance. Ind.Trial Rule 56(C).

### *Conclusion*

Accordingly, we now grant transfer, reverse the trial court, vacate the opinion of the Court of Appeals, and remand this case for further proceedings.

DeBRULER, and DICKSON, JJ., concur.

GIVAN, J., dissents, with opinion in which SHEPARD, C.J., concurs.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. I disagree with the observation of the majority that the case of *Seymour Nat'l. Bank v. State* (1981), Ind., 422 N.E.2d 1223, placed an improper interpretation upon the law enforcement section of the Indiana Tort Claims Act, Ind.Code § 34-4-16.5-3(7). As stated in *Seymour*, the language of the statute is clear. Whether the members of this Court disagree with that language, is beside the point. It is improper for this Court to rewrite the statute and to attribute meaning to that statute which is clearly not there.

The opinion in the majority is an excellent argument to be used in the legislature to bring about a change in the language of the statute in order that law enforcement officers might be responsible for the acts described by the majority opinion. *Seymour* was decided correctly and followed the clear and unambiguous language of the statute.

I would deny transfer in this case.

SHEPARD, C.J., concurs.